IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

K.J.[1]                                  :         CIVIL ACTION
         v.                             :
                                         :
FRANK BISIGNANO, Commissioner            :
of Social Security[2]                    :         NO.  24-4226

## MEMORANDUM AND ORDER

CAROLINE GOLDNER CINQUANTO, U.S.M.J.                November 28, 2025

     Plaintiff seeks review of the Commissioner's decision denying her application for

disability insurance benefits ("DIB").[3]  For the reasons that follow, I conclude that the

decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence

and affirm the Commissioner's decision.

---

[1]Consistent with the practice of this court to protect the privacy interests of
plaintiffs in social security cases, I will refer to Plaintiff using her initials.  See Standing
Order – In re:  Party Identification in Social Security Cases (E.D. Pa. June 10, 2024).

[2]Frank Bisignano was appointed Commissioner of Social Security on May 6,
2025.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Bisignano
should be substituted as the defendant in this case.  No further action need be taken to
continue this suit pursuant to section 205(g) of the Social Security Act.  42 U.S.C.
§ 405(g).

[3]Plaintiff concurrently filed an application for supplemental security income
("SSI"), which was approved at the initial consideration stage.  Tr. at 108-16.  The
Administration found that, as of September 2021, when she filed the application, Plaintiff
was disabled.  Id. at 108.  Unlike SSI, in order to be eligible for DIB, Plaintiff must
establish that she became disabled prior to the expiration of her insured status or date last
insured ("DLI").  20 C.F.R. § 404.131(b).  Here, Plaintiff's DLI is December 31, 2019.
Tr. at 19, 281.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on September 16, 2021, alleging disability beginning on June 1, 2015, as a result of schizophrenia, attention deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), neck and back issues, foot issues, obesity, and possible diabetes. Tr. at 79, 277-78, 296.[4]  Her application was denied initially on March 24, 2022, id. at 103-04, and again upon reconsideration on May 27, 2022.  Id. at 129-30.  On July 11, 2022, Plaintiff requested an administrative hearing.  Id. at 133-34.  After holding a hearing on October 3, 2023, id. at 32-61, the ALJ issued an unfavorable decision on October 19, 2023.  Id. at 18-25.  The Appeals Council denied Plaintiff's request for review on July 12, 2024, id. at 1-4, making the ALJ's October 19, 2023 decision the final decision of the Commissioner.  20 C.F.R. § 404.981.  Plaintiff sought review in federal court on August 24, 2024, Doc. 1, and the matter is now fully briefed.  Docs. 9, 15-17.[5]  The case was originally assigned to my colleague, the Honorable Craig M. Straw, and was reassigned to me.  Docs. 18.[6]

---

[4]Plaintiff filed two prior unsuccessful applications for DIB in 2010 and 2016.  Tr. at 73, 292.

[5]After Plaintiff filed an initial brief requesting the Administration to make the Disability Reports from her 2016 application available, see Doc. 9 at 8-9, the Administration supplemented the Administrative Record with the Disability Reports from the 2016 application.  See tr. at 601-19.  Plaintiff then filed an amended brief.  Doc. 15.

[6]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  See Standing Order – In Re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Docs. 7, 21.

## II.    <u>LEGAL STANDARD</u>

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla."  <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 610 (3d Cir. 2014) (quoting <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005)); <u>see also</u> <u>Biestek v. Berryhill</u>, 587 U.S. 97, 103 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues.  <u>Schaudeck</u>, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process, evaluating:

> 1.     Whether the claimant is currently engaged in substantial gainful activity;
>
> 2.     If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities that has lasted or is expected to last for a continuous period of 12 months;

3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and

5.      If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak, 777 F.3d at 610; see also 20 C.F.R. § 404.1520(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

## III.    DISCUSSION

### A.      ALJ's Findings and Plaintiff's Claims

In her October 19, 2023 decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 1, 2015, her alleged onset date.  Tr. at 20.  At step two, the ALJ found that, through Plaintiff's date last insured, Plaintiff had the medically determinable impairments of lumbar sprain/strain, migraine headaches, and unspecified depression, but that Plaintiff "did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months; therefore, [Plaintiff] did not have a severe impairment or

combination of impairments." Tr. at 21.  As a result, the ALJ concluded that Plaintiff is not disabled.  Id. at 24.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ (1) failed to properly consider evidence regarding Plaintiff's schizophrenia, including denying Plaintiff's request to introduce video evidence of Plaintiff's erratic behavior during the relevant period and disregarding the opinion of the State Agency medical consultant, and (2) made multiple factual misstatements about the lack of contemporaneous treatment notes.  Doc. 15.  Defendant responds that the ALJ's determination that Plaintiff had no severe mental impairments during the relevant period and her consideration of the State Agency medical consultant's opinion are supported by substantial evidence, Doc. 16 at 5-13, and that the ALJ did not abuse her discretion in declining to admit the video evidence.  Id. at 13-15.  Plaintiff has filed a Reply.  Doc. 17.

### B.    Plaintiff's Claimed Limitations and Testimony at the Hearing

Plaintiff was born on October 21, 1972.  Tr. at 277.  She completed high school. Id. at 43, 297.  Plaintiff has past relevant work as a mail handler for the United Staes Post Office.  Id. at 40-42, 297.[7]  Plaintiff was 42 years old when she alleges she became disabled on June 1, 2015, and two days shy of her 51st birthday at the time of the ALJ's decision on October 19, 2023.  Id. at 25, 277.

---

[7]According to Plaintiff's Disability Report, she stopped working at the Postal Service in July 2015.  Tr. at 297.

At the administrative hearing, Plaintiff testified that she cannot remember why she stopped working for the post office.  Tr. at 42.[8]  However, she did testify that she heard voices in the past, and after she stopped working, she lived with her parents.  Id. at 44. Plaintiff's 30-year old daughter also testified at the hearing.  Id. at 46.  She explained that her mother was hearing voices and just "stopped going to work and stopped doing everything and [was] just laying in bed."  Id. at 47.  Plaintiff's daughter remembers her mother getting into an altercation at work and being suspended.  Id.

Plaintiff's daughter, who was in college at the time her mother stopped working, described her mother's living conditions as "not livable at all," "infested [with] bugs, with clothes strewn about in mice feces, and yet her mother "still just laid there."  Tr. at 48.  Ultimately, Plaintiff lost her home because she did not pay the mortgage, and she moved in with her parents.  Id. at 48-49.  When living with her parents, Plaintiff "was very aggressive" and "would go into the hallway and curse and scream" at the neighbors. Id. at 54.  Plaintiff's daughter also testified that she "had to 302 [Plaintiff] one time because she attacked me."  Id. at 52.  Plaintiff's daughter explained that her mother wore only dashikis because they were comfortable and had delusions that she had millions of dollars in a bank account.  Id. at 49.  Plaintiff's daughter also described hallucinations that her mother had, including claiming that she had died and come back to life and that

---

[8]Plaintiff reported in a consultative mental health evaluation in connection with her 2010 application for DIB that "she left her . . . job . . . because she got into a verbal altercation with a coworker, which led to a physical fight."  Tr. at 371.

Bobbie Brown was her father. Id. at 50. When Plaintiff's mother died in December of 2016, she voluntarily went to a crisis center. Id. at 54.[9]

In a Third Party Function Report completed on January 11, 2022, Plaintiff's daughter explained that Plaintiff was living in a homeless shelter. Tr. at 312. She has to be reminded to perform personal hygiene activities. Id. at 313. According to Plaintiff's daughter, Plaintiff's mind wanders and her medication causes her to sleep "a lot." Id. She is unable to pay bills or handle bank accounts. Id. at 315.

### C.    Medical Evidence Summary

There is scant evidence in the record. Predating Plaintiff's current alleged onset date, during a consultative examination performed by Megan Moore, Psy.D., in connection with Plaintiff's 2010 DIB application, Plaintiff reported going to the crisis center in 2006 when she described "hearing voices and being out of it." Tr. at 371. At that time, according to Plaintiff's report, she spent one day in the psychiatric unit at Fitzgerald Mercy Hospital. Id. She subsequently began outpatient treatment, was placed on antidepressant and antipsychotic medication and "[t]he voices became fainter." Id. Plaintiff admitted feeling paranoid around people and described "being highly anxious, and possibly having panic attacks." Id. Dr. Moore found that Plaintiff evidenced "moderately impaired adaptive functioning[,] with a history of symptoms consistent with Bipolar Disorder with psychotic features." Id. at 374.

---

[9] A VE also testified at the administrative hearing. Tr. at 56-60. However, considering the ALJ's determination at the second step of the sequential evaluation, the VE's testimony is not relevant to the ALJ's determination of disability.

Records from State Road Medical Associates establish that Plaintiff was treated from January 23, 2015 to June 26, 2016 for episodic tension headaches for which she was prescribed Treximet,[10] tr. at 383 (1/23/15), dizziness and lightheadedness for which Plaintiff was advised to increase her fluid intake, id. at 393 (3/3/15), leg pain and swelling after heavy lifting for which she was prescribed ibuprofen, id. at 399 (4/8/15), lumbar sprain and strain for which exercises and limits on lifting were recommended, id. at 405 (6/1/15), and migraines for which she was continued on Treximet, id. at 414 (4/22/16), which were noted as better with meds" on June 28, 2016. Id. at 416.

At the behest of her family, following the death of her mother, Plaintiff was seen at Mercy Fitzgerald Hospital on December 19, 2016. Tr. at 428-29. On examination, Rajat Goel, M.D., noted as follows:

> Patient is depressed, withdrawn, sleep is mildly increased,
> going through normal grief reaction after her mother's death.
> [Sh]e is not hopeless, she is not helpless, she is not suicidal,
> there is no psychosis which I'm able to elicit either currently
> or in the past. Patient denies any present auditory or visual
> hallucinations, persecutory delusions, or other delusions. She
> may have borderline intellectual functioning but that we need
> a full psychological evaluation with IQ testing to make a
> commitment on that.

Id. at 428. She reported to Dr. Goel that she may have lost her job because "she was not able to attend it regularly because she used to become heavily sedated because of her

---

[10]Treximet contains naproxen, a nonsteroidal anti-inflammatory medication, and sumatriptan, a migraine headache medicine. See https://www.drugs.com/treximet.html (last visited Oct. 23, 2025). "This medicine will only treat a headache that has already begun. It will not prevent headaches or reduce the number of attacks." Id.

medication." Id. at 429.[11]  He diagnosed her with unspecified depression and acute grief

reaction, recommended that she "follow up with outpatient psychiatry, possibly needs

some antidepressants to help her.".  Id.

The remaining records postdate the expiration of Plaintiff's insured status.  On

August 26, 2021, Plaintiff was admitted "under a 302 status for inability to care for self

and suicidal thoughts" to Crozer Keystone Hospital.  Tr. at 433-34 (Discharge Summary).

At the time of intake, Plaintiff complained of "a 'deflector' that has been placed in the

back of her head that is painful and preventing her from working."  Id. at 433.  At that

time, Plaintiff's daughter "endorse[d] that her mother has been psychiatrically unwell for

many years, [but] says that it is progressively getting worse."  Id.  On examination,

paranoid delusions were noted, id. at 450, 465, and she was assessed with a Global

Assessment of Functioning ("GAF") score of 20.[12]  Id. at 433.

---

[11]Dr. Goel indicated that Plaintiff's then-current medications were 500 mg of
Treximex 3 times a day, and Motrin for her back pain.  Tr. at 429.  However, reviewing
the medical records from State Road Medical Associates, Plaintiff was instructed to take
the Motrin (ibuprofen) three times a day and the Treximet as needed for headaches.  Tr.
at 416-17.

[12]The GAF score is a measurement of a person's overall psychological, social, and
occupational functioning, and is used to assess mental health.  Diagnostic and Statistical
Manual of Mental Disorders, 4th ed. Text Revision (2000) ("DSM-IV-TR") at 32.  A
GAF score of 11 to 20 indicates "[s]ome danger of hurting self or others (e.g., suicide
attempts without clear expectation of death; frequently violent; manic excitement) [or]
occasionally fails to maintain minimal personal hygiene (e.g., smears feces) [or] gross
impairment in communication (e.g., largely incoherent or mute)."  Id.  The DSM-5,
which replaced the DSM-IV-TR in 2013, eliminated reference to the GAF score.
However, the Commissioner continues to receive and consider GAF scores in medical
evidence.  See Administrative Message-13066 (July 22, 2013).

During her admission, Plaintiff was diagnosed with schizophrenia, paranoid type, and treated with Risperidone, and Invega Sustenna.[13]  Tr. at 466, 470, 472, 474, 476, 497. During treatment, she continued to complain of tactile and olfactory hallucinations.  Id. at 478, 480, 482, 497.  She was discharged on September 10, 2021, "stable on medications," with appointments scheduled for psychotropic medication injections.  Id. at 434.  Her discharge diagnosis was schizophrenia, chronic paranoid type, and she had a GAF score of 55.[14]

During follow up appointments with Crozier Community Division, where Plaintiff received injections of Invega Sustenna through January 2022, Plaintiff had normal mental status examinations and exhibited "no overt [signs or symptoms] of psychosis."  Tr. at 534 (10/5/21), 533 (11/2/21), 532 (11/30/21), 531 (12/28/21), 530 (1/25/22).  On January 25, 2022, Bobbi Lomas, R.N., noted that Plaintiff "appears stable on current injection."  Id. at 530.

On February 3, 2022, David Dzurinko, M.D., conducted a consultative Internal Medicine Examination.  Tr. at 572-76.  Plaintiff was 5 feet, 2 inches tall and weighed 299 pounds.  Id. at 574.  The doctor described Plaintiff's gait as "waddling, mildly antalgic,"

---

[13]Risperidone is an antipsychotic medication used to treat schizophrenia.  See https://www.drugs.com/risperidone.html (last visited Oct. 23, 2025).  "Invega Sustenna is an extended-release antipsychotic medicine given by [monthly] intramuscular injection . . . used to treat schizophrenia."  See https://www.drugs.com/invega-sustenna.html (last visited Oct. 23, 2025).

[14]A GAF score of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) [or] moderate difficulty in social occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM-IV-TR at 32.

and noted that Plaintiff could squat 20% of full.  Id.  Plaintiff's hand and finger dexterity

was intact and her grip strength was 4/5 bilaterally.  Id. at 575.  Dr. Dzurinko noted

diagnoses of schizophrenia, ADHD, PTSD, chronic neck and back pain from motor

vehicle accidents in 1995 and 1999, bilateral foot pain, morbid obesity, prediabetes, and

"[a]sthma secondary to bronchitis chronic with attacks once a year."  Id. at 576.

Dr. Dzurinko opined that Plaintiff could occasionally lift and carry up to 20

pounds, sit for 6-7 hours a day in 1-hour increments, stand 30 minutes to 1 hour a day in

5-10 minute increments, and walk 1-2 hours a day in 15-20 minute increments.  Tr. at

577-78.  The doctor also opined that Plaintiff could never reach overhead, could

occasionally push/pull, frequently reach (other than overhead), handle, finger, and feel,

and never perform any postural activities.  Id. at 579-80.  The doctor noted reduced range

of motion in Plaintiff's shoulders and hips.  Id. at 585-86.  A cervical spine x-ray

performed on February 7, 2022, showed degenerative changes.  Id. at 587.

Beau Brendley, Psy. D., conducted a consultative Mental Status Evaluation on

February 3, 2022.  Tr. at 559-62.  The doctor noted Plaintiff was disheveled, poorly

groomed, and her motor behavior was lethargic.  Id. at 560.  Her speech was fluent and

clear, and her thought processes were coherent and goal-directed with no evidence of

hallucinations, delusions, or paranoia.  Id. at 561.  She had a flat affect and her sensorium

was "mildly impaired."  Id.  Her attention and concentration were mildly impaired with

the ability to perform simple calculations but she failed the serial 7s.  Id.  Plaintiff's

recent and remote memory skills were impaired and her cognitive functioning was below average.  Id.  She had good insight and judgment.  Id.[15]

Dr. Brendley diagnosed Plaintiff with schizophrenia and panic disorder.  Tr. at 561-62.  In a Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Brentley found that Plaintiff has moderate (fair) ability to understand, remember, and carry out instructions both simple and complex, and make judgments on complex work-related decisions.  Id. at 563.  He also found Plaintiff had marked limitation (seriously limited) in the ability to interact with others.  Id. at 564.

On March 23, 2022, at the initial consideration stage, David P. Hutz, M.D., concluded that "[t]here is insuff[icient] evidence in [the] file to accurately process this claim for the DLI of 12-31-19 from a physical medical perspective."  Tr. at 75.  On February 18, 2022, Faisal Roberts, Psy.D., found from a review of the record that "[t]he available medical evidence is insufficient to evaluate the severity of functional limitations resulting from mental health impairments."  Id. at 76-77.[16]

_____

[15]Dr. Brendley's assessment contains an internal conflict.  At one point, the doctor indicates that Plaintiff can shop, manage money, and drive.  Tr. at 561.  Later, he states that Plaintiff "is not able to manage her own funds due to severe mental illness."  Id. at 562.  This inconsistency is not material to the court' determination.

[16]In considering Plaintiff's SSI claim, in which Plaintiff does not need to establish disability prior to her DLI, Dr. Roberts found, based upon his review of the record, that Plaintiff was disabled.
> The claimant is unable to maintain attention and concentration for extended periods of time.  The claimant has difficulty being with or near other employees without being distracted by them.  She has a poor manner of relating to others.  Stress exacerbates her symptoms.  The claimant is unable to make simple decisions.  The claimant is unable to perform at a consistent pace.  The claimant has a history of impulsive behavior and would be unable to function in a competitive environment.

At the reconsideration level, Richard Fredric Small, Ph.D., found that

> [t]he available medical evidence is insufficient to evaluate the
> severity of functional limitations resulting from mental health
> impairments.  Although she was seen prior to the DLI in
> 2016[,] there is insufficient evidence of marked impairments at
> that time, and there is insufficient evidence of continuing
> severe mental problems from that time through the DLI.

Tr. at 93.

### D.    **Plaintiff's Claims**

#### 1.    Consideration of Evidence Relating to Schizophrenia

Plaintiff complains that "[t]he ALJ erred by insisting that only a schizophrenia

diagnosis occurring after Plaintiff's alleged onset date and before her date last insured

could render schizophrenia a medically determinable impairment."  Doc. 16 at 6.  In

responding, Defendant focuses on the ALJ's determination the Plaintiff had no severe

impairment during the relevant period.  Id. at 5-9.

Defendant's response misses the mark.  Before addressing the severity of an

impairment, Plaintiff must first establish the existence of the impairment.  "Plaintiff was

'required to demonstrate the existence of a [medically determinable] impairment that

precluded her from performing substantial gainful activity for a continuous period of

twelve months prior to the expiration of her insured status."  Tolfa v. Colvin, Civ. No.

---

> The restrictions resulting from the impairment are such that the
> claimant would be unable to meet basic mental demands on a sustained
> basis.  Due to recency of psychiatric treatment, a shortened diary (1-2
> years) is recommended in order to see if psychotropic medication results in
> sustained psychiatric stability.

Tr. at 86.

13-624, 2014 WL 12537091, at *1 n.1 (W.D Pa. Sept. 16, 2014) (quoting Kelley v. Barnhart, 138 Fed. App'x 505, 507 (3d Cir. 2005)); see also Scipio v. Comm'r of Soc. Sec., 611 Fed. App'x 99, 102 (3d Cir. 2015) ("[A] disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period.") (quoting Fargnoli v. Massanari, 247 F.3d 34, 38-39 *3d Cir. 2002)); 20 C.F.R. § 404.1520(a)(4)(ii) ("If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement of § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.") (emphasis added). Thus, because the ALJ did not find schizophrenia medically determinable, she did not consider it in evaluating the severity of Plaintiff's impairments and a discussion of severity is premature.

"A 'medically determinable' impairment is one that results from anatomical, physiological, or psychological abnormalities demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Scipio, 611 Fed. App'x at 101-02 (citing 42 U.S.C. § 423(d)(3)). Moreover, symptoms alone, are not enough to establish the existence a medically determinable impairment.

> [T]he regulations further provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone. Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.

Social Security Ruling ("SSR") 96-4p, "Policy Interpretation Ruling Titles II and XVI: Symptoms, Medically Determinable Physical and Mental Impairments, and Exertional and Nonexertional Limitations," 1996 WL 374187, at *1 (July 2, 1996).

### a. Failure to utilize Social Security Ruling 18-01p

Plaintiff complains that the ALJ erred by requiring Plaintiff to produce "contemporaneous medical evidence *from the precise period* of alleged disability," to establish that schizophrenia was a medically determinable impairment, Doc. 15 at 6 (emphasis in original), and argues that the ALJ should have inferred an onset date of Plaintiff's schizophrenia based on other evidence in the record. Id. at 6-11. Plaintiff relies on SSR 18-01p, which "clarifies how [the Administration] determine[s] the [Established Onset Date] in disability claims." SSR 18-01p, "Titles II and XVI: Determining the Established Onset Date (EOD) in Disability Claims," 2018 WL 4945639, at *2 (Oct. 2, 2018). SSR 18-01p specifically states, "[f]or title II [DIB] claims, if we find that the claimant did not meet the statutory definition of disability before his or her insured status expired, we will not determine whether the claimant is currently disabled or was disabled within the 12-month period before the month that he or she applied for benefits." 2018 WL 4945639, at *5 n.17.

Defendant argues that Plaintiff's reliance on SSR 18-01p is misplaced because it only "applies to establishing the onset date in disability claims when disability *has already been established.*" Doc. 16 at 9 (citing 2018 WL 4945639, at *2) (emphasis in Plaintiff's Brief). Plaintiff responds that her reliance on SSR 18-01p is appropriate

because Defendant found her disabled for purposes of her concurrently-filed SSI application.  Doc. 17 at 1.

Few courts have addressed the applicability of SSR 18-01p to a DIB determination when a claimant has been found disabled for purposes of SSI for a period beyond the claimant's date last insured.  See Velazquez v. Kijakazi, Civ. No. 20-342, 2022 WL 970068, at *7 (N.D. Ind. Mar. 30, 2022) ("The Court's own research shows that the question of whether the ALJ was required to determine an onset date in circumstances like the present is one of first impression insofar as SSR 18-01p is concerned.");[17] Chris M. v. Kijakazi, Civ. No. 21-1, 2022 WL 1197630, at 4 (S.D. Ind. Apr. 21, 2022) ("there is currently scant caselaw interpreting SSR 18-01p").[18]

After carefully reviewing SSR 18-01p, I conclude that the Ruling is not applicable in the circumstances here presented.  The Ruling speaks in terms of "the application," in the singular, drawing distinctions between the non-medical requirements for SSI and DIB eligibility.  2018 WL 4945639, at *2.  "If we find that a claimant meets the statutory definition of disability and meets the applicable non-medical requirements *during the*

---

[17]In Velazquez, the court found that in the absence of any argument from the Commissioner, Ruling 18-01p was applicable and the ALJ had failed to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings."  2002 WL 970068, at *11.

[18]In Chris M., the ALJ was considering applications for both SSI and DIB and issued a partially favorable decision, granting SSI and denying DIB, finding Plaintiff's onset date was after the date last insured.  2022 WL 1197630, at *1.  The District Court found the ALJ properly utilized Ruling 18-01p in determining the onset date.  Id. at *5.

*period covered by his or her application*, we then determine the claimant's EOD. 2018 WL 4945639, at *2 (emphasis added).

Here, the Administration granted Plaintiff's SSI application at the initial consideration stage, finding, based on her application date, that "[a]s of September 2021[,] you meet all the rules to be eligible for SSI based on being disabled." Tr. at 108. Because Plaintiff's insured status expired nearly two years earlier, this finding with respect to her SSI application has no impact on her DIB application. The ALJ found that Plaintiff did not meet the eligibility requirements for disability prior to her DLI. Thus, Ruling 18-01p is not applicable.

I find support for my reading of Ruling 18-01p from other courts. In Wood v. Commissioner of Social Security, the plaintiff argued that the ALJ

> erred by immediately considering the ultimate question: Did Wood have a medically determinable physical impairment prior to her date last insured (DLI)? Instead, the ALJ should have considered whether she had a medically determinable impairment at the end of 2018 [when MRI studies indicated a possible back impairment], and then could have worked backwards to determine whether she had this impairment prior to her DLI.

Civ. No. 20-2245, 2021 WL 7501836, at *5 (D. Ariz. Nov. 18, 2021). The District Court rejected Plaintiff's argument.

> [The plaintiff's] proposal is foreclosed by [the language of Ruling 18-01p], which states that "we will not consider whether the claimant first met the statutory definition of disability on a date that is beyond the period under consideration." SSR 18-1p. The ALJ is not authorized to consider whether [the plaintiff] was disabled after her DLI and then work backwards.

Id. at *6; see also Sarah K. v. Comm'r of Soc. Sec., Civ. No. 21-1290, 2024 WL 2260283, at 17 (W.D.N.Y. May 17, 2024) (rejecting argument that, pursuant to SSR 18-01p, ALJ "should have been looking for evidence to support an onset date" based on a finding of disability in a subsequent application); Makris v. Comm'r of Soc. Sec., Civ. No. 20-2245, 2021 WL 6617468, at *5-6 (N.D. Ohio Dec. 27, 2021) (affirming denial of DIB and relying on SSR 18-01p n.17).

Therefore, I reject Plaintiff's claim that the ALJ erred by failing to invoke SSR-18-01p to determine a disability onset date in the absence of a finding of disability with respect to Plaintiff's DIB claim.

b.     ALJ's analysis of the evidence

However, even if the ALJ were required to work backwards and determine a disability onset date based on the finding of disability during a later period, there is scant evidence from which to do so. As the ALJ found, Plaintiff did not report any mental health symptoms to her primary care provider during the relevant period, tr. at 22 (citing id. at 380-426 – State Road Medical Associates' records), and the single psychiatric evaluation done during the relevant period, shortly after Plaintiff's mother died, revealed that Plaintiff "displayed some signs of depression[,] but also [was] goal oriented and [had] logical thought processes, normal thought content, full orientation, and fair insight and judgment." Id. at 23. "[S]he was diagnosed with unspecified depression and acute grief reaction [and] advised to seek outpatient mental health care . . . though there is no

evidence to suggest that she followed up on . . . these recommendations." Id. (citing

380-426, 427-32).[19]

The Scipio case is instructive in analyzing Plaintiff's complaint that the ALJ erred

in failing to find her subsequently-diagnosed schizophrenia a medically determinable

impairment during the relevant period.  In Scipio, the plaintiff insisted that she suffered a

stroke and had several mini-stokes thereafter resulting in memory loss and difficulty

ambulating.  611 Fed. App'x at 101.  The ALJ concluded that "there was no objective

medical evidence demonstrating that [the plaintiff] had ever had a cerebrovascular

accident ("CVA" or stroke) or a transient ischemic attack ("TIA").  Id.  The District

Court affirmed the ALJ's decision and the Third Circuit affirmed the District Court's

decision.

> We agree that the available records documenting [the plaintiff's] neurological or cardiovascular health during the relevant period supported the ALJ's conclusion that [the plaintiff] did not experience a CVA or TIA.  As the ALJ discussed, although the record is replete with [the plaintiff's] subjective complaints that she experienced strokes, there is simply no clinical or objective evidence to support her claims.  To the contrary, the evidence in the form of MRI and MRA results reasonably supported a finding that she did not, at any point, experience a CVA or TIA.

Id.

Here, the ALJ explained that the records during the relevant period, June 1, 2015

(onset date) and December 31, 2019 (date last insured), "document only minimal mild

---

[19]I also note that Dr. Goel, who conducted the psychiatric evaluation, stated that Plaintiff "possibly needs some antidepressants to help her."  Tr. at 429.

physical and mental health complaints during the relevant period with largely normal or mild positive findings noted on clinical and mental status examinations, and minimal and routine treatment including one crisis evaluation and some medication related to migraines with no reports of significant side effects or complications related to these treatments." Tr. at 23. The record supports these findings. Plaintiff's visit to State Road Medical Associates on June 1, 2015, her onset date, was for follow up after she strained her back carrying heavy boxes three weeks earlier. Id. at 401. At that time, Plaintiff reported that the ibuprofen helped the pain, she had mild tenderness in the lower lumbar area, and normal range of motion. Id. at 405. The only mental status notation was the Plaintiff "[d]enie[d] anxiety." Id. at 402. She was seen on April 22, 2016 for a migraine and her prescriptions for Treximet and Ibuprofen were refilled. Id. at 414. On June 28, 2016, Plaintiff had a "check up," during which her medications were renewed and she was told to follow up in a year. Id. at 416-21.[20]

The only mental health treatment Plaintiff sought or received during the relevant period was shortly after her mother died. On December 19, 2016, Plaintiff reported to Dr. Goel at Mercy Fitzgerald Hospital that she "used to see a psychiatrist . . . . 2 years ago and has not kept a follow-up and does not need." Tr. at 428. Dr. Goel found that

> Patient is depressed, withdrawn, sleep is mildly increased,
> going through normal grief reaction after her mother's death.

---

[20]I note that Namir Kosa, M.D., at State Road Medical Associates, included "Psych" notes during Plaintiff's examination on March 3, 2015, three months prior to Plaintiff's alleged disability onset date. At that time, Dr. Kosa found Plaintiff had a "[n]ormal mood and affect; normal attention span and concentration, judgement/insight intact, alert and oriented to person, place and time, memory intact for recent and remote events, [n]o depression, anxiety or agitation." Tr. at 393.

> [Sh]e is not hopeless, she is not helpless, she is not suicidal,
> there is not psychosis which I'm able to elicit either currently
> or in the past.  Patient denies any present auditory or visual
> hallucinations, persecutory delusions, or other delusions.

Id.  Dr. Goel diagnosed Plaintiff with unspecified depression and acute grief reaction.  Id.

at 429.

Although Plaintiff was diagnosed with schizophrenia nearly two years after her

DLI, the medical and mental health treatment evidence from the relevant period does not

indicate any such diagnosis and only complaints of depression after her mother's passing.

Thus, even if the ALJ were bound to follow Ruling 18-01p, there simply is no medical

evidence from which the ALJ could infer an onset date prior to Plaintiff's crisis

admission to Crozer Chester Medical Center in 2021, nearly two years after Plaintiff's

DLI.

### c.    Consideration of Dr. Roberts' statement

Plaintiff also complains that the ALJ's decision is not based on substantial

evidence because she disregarded the State Agency consultant's opinion that Plaintiff's

psychiatric symptoms were long-standing.  Doc. 15 at 10.  Defendant responds that

substantial evidence supports the ALJ's consideration of Dr. Roberts' statement.  Doc. 16

at 10.

When Dr. Roberts considered Plaintiff's SSI application on initial review on

February 18, 2022, he stated, "[w]hile there is a [history] of only two inpatient

psychiatric admissions (2015 and 2021), it is believed significant and debilitating

psychiatric [symptoms] were ongoing for many years."  Tr. at 86.  The ALJ specifically

addressed Dr. Roberts' statement, noting that the statement

appears to be largely based on the subjective complaints noted in the 2021 inpatient treatment records, including a note from [Plaintiff's] daughter that [Plaintiff] has been psychiatrically unwell for years.  ([tr. at 86).  However, there is no evidence of any mental health complaints or treatment beyond one crisis evaluation during a period of acute grief during which she reported relatively minimal active symptoms and displayed some signs of depression, but otherwise normal findings on mental status examination.  ([id. at 427-32]).

Id. at 23-24.

The ALJ's determination is supported by substantial evidence.  As previously noted, the treatment records for the relevant period reveal no mental health complaint made to Plaintiff's primary care provider and the single psychiatric evaluation revealed unspecified depression and a grief reaction triggered by the death of Plaintiff's mother.

Moreover, to the extent Plaintiff argues that Dr. Roberts' statement results in an ambiguity in the record, I reject the argument.  Dr. Roberts also considered the record for the initial determination of Plaintiff's DIB application, recognizing a DLI of December 31, 2019, and concluded that "[t]he available medical evidence is insufficient to evaluate the severity of functional limitations resulting from mental health impairments."  Tr. at 76.  Plaintiff faults the ALJ for failing to infer an earlier onset date based on a doctor who specifically found there was insufficient evidence to make that determination.  An ALJ may not substitute his or her opinion for that of a medical provider.  See Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000) ("The principle that an ALJ should not substitute his lay opinion for the medial opinion of experts is especially profound in a case involving a mental disability.").

d.    ALJ's failure to admit the video

Plaintiff complains that "[t]he ALJ erred in denying outright Plaintiff's request to submit video evidence of Plaintiff's erratic behavior and living condition that was recorded during the period in question." Doc. 15 at 9. Defendant responds that the ALJ did not abuse her discretion in declining to admit the video and Plaintiff suffered no prejudice because the ALJ permitted Plaintiff's daughter to testify. Doc. 16 at 13-14.

"Decisions about the admission and management of evidence at an administrative hearing are reviewed for abuse of discretion." Silver v. Kijakazi, Civ. No. 21-1918, 2024 WL 53019, at *3 (E.D. Pa. Jan. 3, 2024) (citing Richardson v. Perales, 402 U.S. 389, 400 (1971) ("the conduct of the hearing rests generally in the examiner's discretion"); Warner-Lambert Co. v. Heckler, 787 F.2d 147, 162 (3d Cir. 1986) ("[t]his discretion includes the power to make reasonable, nonarbitrary decisions regarding the admission or exclusion of evidence for procedural reasons.")).

Prior to the hearing, Plaintiff's counsel requested to present a video that Plaintiff's daughter had taken in 2015, showing Plaintiff "behaving abnormally." Tr. at 196. At the hearing, the ALJ denied the request, indicating that the video was not evidence. Id. at 38. However, the ALJ did permit Plaintiff's daughter to testify "as to her first-hand knowledge" of Plaintiff's condition during the relevant time. Id. at 39; see also id. at 47-55 (daughter's testimony).

In her decision, the ALJ explained that

> per 20 CFR 404.1513, this video does not meet the requirements to be defined as medical evidence as visual evidence is not included in the statutory definition of evidence. It [is] also noteworthy the video was not taken by a

> medical source.  Therefore, this video cannot be admitted to
> the record.

Tr. at 18.  Plaintiff complains that SSR 18-01p states that "[w]e may consider evidence

from other non-medical sources . . . if . . . we cannot reasonably infer the date that the

claimant first met the statutory definition of disability based on the medical evidence in

the file.  Doc. 15 at 9.  As previously discussed, SSR 18-01p is not applicable to

Plaintiff's case.  Therefore, Plaintiff's reliance on Ruling 18-01p to justify a need for the

video is in error.

Moreover, Plaintiff has failed to establish that she was prejudiced by the failure to

admit the video.  The ALJ permitted Plaintiff's daughter to testify at the hearing.

Although there was no direct reference to the video, Plaintiff's daughter testified about

the state of Plaintiff's home, "cluttered with a bunch of clothes and mice feces, . . . [a]nd

she still just laid there."  Tr. at 48.  Plaintiff's daughter also talked about her mother's

delusions of having "millions of dollars in her [bank] account" and visual hallucination of

"poop all over her clothes and closet."  Id. at 49-50.  Thus, Plaintiff's counsel was given

the opportunity to allow Plaintiff's daughter to convey the contents of the video.  I find

no abuse of discretion.


### 2. Factual Misstatements

Finally, Plaintiff complains that the ALJ's decision is not based on substantial

evidence because the ALJ "included multiple factual misstatements in her decision about

the record's lack of contemporaneous treatment notes."  Doc. 15 at 12.  Defendant

responds that, read in context, the ALJ's statements are not misrepresentations and, reading the ALJ's decision as a whole, "the ALJ acknowledged Plaintiff's subjective reports of her symptoms during the relevant period but found these reports inconsistent with the record." Doc. 16 at 11 (citing Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)).

First, in addressing Dr. Roberts' statement, the ALJ stated, "there is no evidence of any mental health complaints or treatment beyond one crisis evaluation during a period of acute grief during which she reported relatively minimal active symptoms and displayed some signs of depression, but otherwise normal findings on mental status examination." Tr. at 23-24 (citing id. at 427-32). In her brief, Plaintiff points out that she made a complaint about her mental health when she filed her Adult Disability Report with respect to her previous application filed in May of 2016. Doc. 15 at 12. In that form, Plaintiff listed paranoid schizophrenia as one of her impairments and noted that she had "been suffering with depression and other mental health conditions." Tr. at 603.

Read in context and after reading the opinion in full, the ALJ was referring to complaints made to treatment providers. Earlier in her decision the ALJ acknowledged that Plaintiff testified that "she used to hear voices," and that Plaintiff' daughter testified that Plaintiff stopped working "when she started hearing voices." Tr. at 21. Thus, the ALJ acknowledged Plaintiff's and her daughter's subjective complaints regarding Plaintiff's psychiatric symptoms. Reviewing the medical and mental health treatment evidence contained in the record, the ALJ's statement was accurate. As previously discussed, Plaintiff made no mental health complaints to her primary care provider and

had one psychiatric examination shortly after her mother died, which the ALJ accurately considered.

Plaintiff also argues that the ALJ misrepresented the record when she stated that "during the hearing, the claimant's daughter testified that *she has not engaged in any treatment related to her mental health* other than the one documented visit to a crisis center." Doc. 15 at 12 (citing <u>tr.</u> at 23) (emphasis in Plaintiff's Brief). Again, in context, the ALJ was referring to the relevant time period (June 1, 2015 – December 31, 2019), and the ALJ's statement was consistent with Plaintiff's daughter's testimony. During the hearing, Plaintiff's counsel asked Plaintiff's daughter "you don't happen to know who she saw as a psychiatrist, do you know?" <u>Tr.</u> at 51. There was no time restriction on the question. Plaintiff's daughter responded that she did not, but had been trying to find the doctor, but her mother was of little help. <u>Id.</u> The ALJ followed up and asked, "Did your mom see a psychiatrist?" <u>Id.</u> at 52. Plaintiff's daughter confirmed that her mother had seen a psychiatrist and that she had her mother committed once (the Crozer Chester hospitalization in August-September 2021). <u>Id.</u> The ALJ clarified with Plaintiff's daughter that her mother had not seen any doctors while living with Plaintiff's parents after losing her job and her house. <u>Id.</u> at 52-53. In addition, Plaintiff's daughter confirmed that her mother did not follow up with any treatment after the psychiatric evaluation in December 2016. <u>Id.</u> at 55. Thus, the ALJ accurately characterized the testimony.

Contrary to Plaintiff's complaint, the ALJ's decision is not wrought with factual inaccuracies.

IV.  **<u>CONCLUSION</u>**

The ALJ's decision is supported by substantial evidence.  Plaintiff's reliance on SSR 18-01p is flawed because Plaintiff was not found disabled for purposes of her DIB application.  Moreover, the evidence of record does not provide a basis for the ALJ to infer a disability onset date prior to Plaintiff's DLI.  The ALJ properly considered Dr. Roberts' statement and did not mischaracterize the record.  Finally, the ALJ did not abuse her discretion in denying admission of the video because Plaintiff's daughter could and did provide a narrative about her mother's condition.

An appropriate Order follows.